**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **HOSAM MAHER HUSEIN SMADI,** | § | |
| **#39482-177,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **3:12-CV-4154-M-BK** |
| | § | **(3:09-CR-0294-M-01)** |
| **UNITED STATES OF AMERICA,** | § | |
| **Respondent.** | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Petitioner, a federal prisoner, filed a *pro se* motion under 28 U.S.C. § 2255 to vacate, set

aside, or correct sentence.   For the reasons that follow, it is recommended that the section 2255

motion be denied.

## I.   BACKGROUND

Petitioner pleaded guilty to the attempted use of a weapon of mass destruction and was

sentenced to 24 years' imprisonment and a five-year term of supervised release.   *See United*

*States v. Smadi*, 3:09-CR-294-M(01) (N.D. Tex., Dallas Div., Oct. 28, 2010), *app. dism. as*

*frivolous*, No. 10-11162, 446 Fed. Appx. 679 (5th Cir. Oct. 21, 2011) (unpublished *per curiam*).

Petitioner subsequently filed this timely section 2255 motion (which includes 30 pages of

arguments and 60 pages of exhibits) raising a litany of difficult to discern claims.   (Doc. 5).

Specifically, he challenges the voluntariness of his guilty plea and appeal waiver, the preclusion

of mental capacity and entrapment defenses, and the refusal to dismiss the indictment.   *Id.* at

5-6.   He also asserts equal protection, due process, and *Brady/Giglio* violations.   *Id.*   In

addition, liberally construing his pleadings, Petitioner appears to raise a claim of ineffective

assistance of counsel.   *Id.* at 6.   The government argues the section 2255 motion lacks merit,

and Petitioner has filed a lengthy reply (over 50 pages).   (Doc. 14, 17).[1]

## II.  ANALYSIS

After conviction and exhaustion or waiver of the right to direct appeal, the court presumes that a petitioner stands fairly and finally convicted.   *See United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998) (citing *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir.   1991) (*en banc*)).   Under 28 U.S.C. § 2255, a petitioner can collaterally challenge his conviction only on constitutional or jurisdictional grounds.   *See United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001).

The Government asserts that Petitioner's claims are barred by the waiver of collateral relief, contained in the plea agreement, except for claims attacking the voluntariness of his guilty plea/waiver and the performance of defense counsel.   A defendant's waiver of his statutory right to challenge his conviction under section 2255, like a waiver of the right to appeal, is enforceable if the waiver is clear and unambiguous and the defendant knowingly and voluntarily waived his rights.   *United States v. White*, 307 F.3d 336, 341 (5th Cir. 2002) (*citing United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994)).   In addition, "an ineffective assistance of counsel argument survives a waiver of appeal only when the claimed assistance directly affected the validity of that waiver or the plea itself."   *Id.* at 343.

---

[1]   Petitioner's reply brief is in excess of the 10-page limit.   *See* N.D. TEX. L. CIV. R. 7.2(c).   While Petitioner's *pro se* status does not excuse compliance with this Court's Local Rules, the Court has not stricken the reply in the interest of judicial economy.

Prior to filing this action, Petitioner unsuccessfully sought an extension of time to file a section 2255 motion claiming he lacked the proper mind set, mental capacity, and documents or materials to file a proper motion.   *Smadi v. United States*, No. 3:12-CV-4046-M (N.D. Tex. Nov. 8, 2012) (dismissing motion for extension of time for want of jurisdiction), *appeal dismissed*, No. 12-11197 (5th Cir. Mar. 13, 2013).

<u>Voluntariness of Guilty Plea and Waiver of Collateral Relief</u>

Petitioner asserts his guilty plea was involuntary, unknowing, and coerced.   (Doc. 5 at 8-9, 27).   Because he was an 18-year-old Jordanian national who had limited proficiency in English, and was "told he will spend life in prison if he went to trial," he accepted the guilty plea and appeal waiver without fully understanding them.   *Id.* at 27.   Petitioner submits his confession was coerced as a result of "mental illnesses and conditions," and that "he took the plea to keep from getting life, yet 288 months [24 years] is the same to him."   *Id.*

A guilty plea must be knowingly, voluntarily, and intelligently made to be constitutionally valid.   *United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000).   In determining the voluntariness of a plea, the court considers all relevant circumstances, including whether the defendant: (1) had notice of the charges against him; (2) understood the constitutional protections he was waiving; and (3) had access to competent counsel.   *United States v. Washington,* 480 F.3d 309, 315 (5th Cir. 2007).

A defendant ordinarily may not refute his sworn testimony given at a plea hearing while under oath.   *Cervantes,* 132 F.3d at 1110.   Declarations made under oath in open court carry a strong presumption of truth, forming a formidable barrier to relief in any subsequent collateral proceedings.   *Blackledge v. Allison,* 431 U.S. 63, 73-74 (1977).   A defendant must also overcome the presumption of regularity and "great evidentiary weight" accorded court records. *See United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (holding that signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether plea is entered voluntarily and knowingly).

In this case, the only conclusion supported by the record is that Petitioner's guilty plea and waiver were knowing and voluntary.   At the re-arraignment hearing, Petitioner testified that he

Page **3** of **11**

had read the indictment and understood the charge against him and the essential elements, that is, what the government would have to prove before he could be convicted.   *See* Re-arraignment Tr. (Doc. 72) at 14-15.   He also assured the Court that he had reviewed the plea agreement with counsel, that he understood all of its provisions, including his waiver of his right to appeal and to seek collateral relief, and that no one had promised him anything or pressured him to plead guilty. *Id.* at 18, 20, 23.   In addition, Petitioner confirmed that he read the factual resume before signing it and agreed the stipulated facts were true.   *Id.* at 15-17.

Petitioner now asserts that his limited ability to speak English and to understand the interpreter (whose Arabic, he claims, was different) "left the Petitioner without proper understand[ing] of the entire process."   (Doc. 5 at 8).   At re-arraignment, however, Petitioner stated that he wanted to proceed without an interpreter.   *See* Re-arraignment Tr. 7-8.   He assured the Court that he could understand the proceedings and would ask the interpreter to assist with any difficult words.   *Id.*   Moreover, during the hearing, Petitioner never mentioned having any trouble understanding the interpreter's Arabic translations.   *Id.*   Although Petitioner affirmed that he had read the factual resume and the plea agreement, both in English, and fully understood both documents, in an abundance of caution, the Court directed that both documents be read to Petitioner in Arabic.   *Id.* at 12-13.

Next, Petitioner claims his confession was coerced as a result of diagnosed "mental illnesses and conditions."   (Doc. 5 at 27).   He alleges he was "not in his normal state of mind and at times [was] very parinoid [sic] and delusional."   *Id.*   However, his claims are belied by the record.   During the re-arraignment hearing, Petitioner confirmed that he understood the plea and the proceedings despite taking anti-psychotic and anti-depressant medications.   *See* Re-arraignment Tr. at 11.   Likewise, defense counsel stated that he believed Petitioner's mental

health issues did not render him incompetent to plead guilty.   *Id.* at 13.

Petitioner further states that "he did accept the Plea Offer . . . because he did not want to face a life sentence that he was told he would receive if he went to trial."  (Doc. 5 at 8).   He asserts "he was left without a choice" because, "though he wanted to go to trial, he was told that he would not win."   *Id.*   Petitioner also claims that he "answer[ed] 'Yes' to all the questions that he was asked, because he was told that is what he [was] supposed to do in order for the trial judge to give or grant him some leniency to his sentence."   *Id.*

Petitioner's sworn statements during the re-arraignment hearing negate each of the preceding allegations.    Petitioner assured the Court that his plea was voluntary, that he "did it by [him]self," and that no one had forced him to plead guilty.   *See* Re-arraignment Tr. at 20. Notably, to ensure Petitioner's plea was completely voluntary and knowing, the Court restated its questions in simpler terms, and Petitioner again affirmed that the plea was of his own free will, that he understood it, and that no one had pressured him in any way:

> THE COURT: All right. Mr. Smadi, in order for me to consider accepting your plea I have to be satisfied that everything that you're doing is completely voluntary. That's a word I have used before that you had some trouble with, so let me use a different word.
>
> That you are doing everything freely, on your own, that you understand it, that no one is forcing you or threatening you or coercing you or exercising any excessive influence on you?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: Is that true? Is anyone forcing you or pressuring you in any way to take this action?
>
> THE DEFENDANT: No, your Honor.
>
> THE COURT: Do you understand that although there is an obvious benefit to you in pleading, if I accept the plea that I cannot sentence you to more than 30 years, you still should not plead guilty unless you are in fact guilty of the offense?

THE DEFENDANT: Yes, your Honor.

*Id.* at 23-24.

Additionally, Petitioner asserts he pled guilty because of "scare tactics" by defense counsel -- namely threats that if Petitioner proceeded to trial, he would receive a life sentence.   (Doc. 5 at 16, 18).   However, counsel's advice, that if Petitioner were found guilty at trial he would face a life sentence, did not amount to a threat.   *See United States v. Cothran*, 302 F.3d 279, 284 (5th Cir. 2002) (defense attorney's prediction of a harsh sentence at trial did not alone render a guilty plea involuntary and plea colloquy should control).   "A defense attorney should make informed predictions about the consequences of either pleading guilty or going to trial."   *Id.*   In addition, as noted above, Petitioner confirmed several times under oath that no one had coerced, forced, or threatened him in any way to enter his guilty pleas, nor had anyone made any promises to cause him to enter into the plea agreement.   Re-arraignment Tr. at 20, 24.   Moreover, it is well established that a guilty plea is not rendered invalid merely because it is motivated by fear of greater punishment.   *United States v. Araiza*, 693 F.2d 382, 384-385 (5th Cir. 1982) (citing *Bordenkircher v. Hayes,* 434 U.S. 357 (1978); *Flores v. Estelle,* 578 F.2d 80, 85 (5th Cir.1978)). In any event, Petitioner affirmed that he was satisfied with his counsel's representation and advice, that he had no complaint about any of their work, and that "[t]hey did the best job they can do ever."   *Id.* at 20-21.

Lastly, Petitioner contends that the sentence he ultimately received was "harsh and stiff," and greater than sentences imposed on individuals with similar mental defenses.   (Doc. 5 at 11-12, 18).   But Petitioner twice assured the Court that he understood that, even if he pled guilty, he could still be sentenced to the maximum 30-year imprisonment term (as agreed in the

plea agreement), and that he would not have any recourse.    Re-arraignment Tr. at 12, 19.

> THE COURT:   Do you understand -- I'm going to come back to this in a few
> moments, but do you understand that if I accept that plea your lawyers can come
> here and present doctors and members of your family and tell me about the
> circumstances with your parents and their divorce and illness in your family and I
> may still decide, if I accept the plea, to sentence you to 30 years?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: So you understand that you have agreed to that, and if I do that
> there is basically nothing you can do about it?
>
> THE DEFENDANT: Yes, your Honor.

*Id.* at 12.

> THE COURT: Do you understand that the plea agreement that is contemplated here
> is that I may not sentence you to more than 30 years, but other than that I can
> sentence you to a sentence that I deem appropriate?
> Do you understand that?
>
> THE DEFENDANT: Yes, your Honor.

*Id.* at 19.

At the re-arraignment hearing, the Court methodically and fastidiously addressed every issue related to the voluntariness of Petitioner's guilty pleas, including extensively questioning Petitioner, defense counsel and counsel for the government.    Consequently, the undersigned concludes that Petitioner was fully competent and capable of entering an informed guilty plea, that his plea was knowing and voluntary and supported by an independent factual basis, and that Petitioner understood fully that he was waiving his right to seek collateral relief under section 2255.    Accordingly, Petitioner's claims challenging the voluntariness of his guilty plea and his waiver of the right to collaterally attack the judgment fail.

<u>Claims Waived</u>

Petitioner asserts various claims related to entrapment/mental-defect defenses, dismissal of indictment in light of coercion/entrapment, unlawful arrest, desire to proceed to trial, errors in sentencing, and possibly a *Brady/Giglio*[2] claim.   (Doc. 5 at 8, 11-13, 22, 24, 27, 28).   Having concluded that Petitioner's guilty plea and his waiver of the right to collaterally attack his conviction and sentence were knowing and voluntary, the Court finds that each of these remaining claims is foreclosed by the waiver contained in the Plea Agreement.

Alternatively, the claims raise only non-jurisdictional defects waived by Petitioner's voluntary guilty plea.   *See United States v. Stevens*, 487 F.3d 232, 238 (5th Cir. 2007) ("When a defendant enters a voluntary and unconditional guilty plea, the plea has the effect of waiving all nonjurisdictional defects in the prior proceedings."); *United States v. Daughenbaugh*, 549 F.3d 1010, 1012-13 (5th Cir. 2008) (voluntary guilty plea waived all non-jurisdictional defects, including errors in charging procedure).   Likewise, Petitioner's voluntary guilty plea precludes him from asserting any *Brady/Giglio* claim.   *United States v. Conroy*, 567 F.3d 174, 178-79 (5th Cir. 2009) (*per curiam*); *Orman v. Cain*, 228 F.3d 616, 617 (5th Cir. 2000) ("*Brady* requires a prosecutor to disclose exculpatory evidence for purposes of ensuring a fair trial, a concern that is absent when a defendant waives trial and pleads guilty.").

<u>Ineffective Assistance of Counsel Claims</u>

Petitioner also appears to allege ineffective assistance of counsel related to the voluntariness of his guilty plea.   He claims that trial counsel engaged in "scare tactics" to prompt him to plead guilty, and failed to purse entrapment and insanity defenses.   (Doc. 5

---

[2]   *Brady v. Maryland,* 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972).

at16-18; Doc. 17 at 33-46).

   To establish ineffective assistance of counsel, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense.   *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).   The Court need not address both components if the petitioner makes an insufficient showing on one.   *Id.* at 697.   To show prejudice in the context of a guilty plea, however, the petitioner must show that "counsel's constitutionally ineffective performance affected the outcome of the plea process."   *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).   The petitioner bears the burden of demonstrating that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."   *Id.*

   Petitioner cannot meet his burden under *Strickland/Hill*.   His assertions about the alleged "scare tactics," even when liberally construed, are conclusory.   As previously discussed herein, the gist of Petitioner's claim is that counsel predicted he would receive a life sentence if he went to trial.   However, as the Government correctly notes, defense counsel properly made "informed predictions about the consequences of either pleading guilty or going to trial." *Cothran*, 302 F.3d at 284.

   Moreover, contrary to Petitioner's allegations regarding counsel's failure to pursue an entrapment defense, the evidence reflected that the intent to conduct violent attacks originated with him, not the government agent, and that Petitioner declined opportunities to take a different course of action.   *See, e.g.*, Sealed Presentence Report (PSR) ¶¶ 13-45, Doc. 74 in criminal case; *United States v. Theagene*, 565 F.3d 911, 918 (5th Cir. 2009) ("The critical determination in an entrapment defense is whether criminal intent originated with the defendant or with government agents.").   In addition, Petitioner's multiple mental health evaluations did not

disclose either incompetency or insanity.   *See, e.g.*, Sentencing Tr., Doc. 96 at 119 (defense

counsel acknowledged that after reviewing the lengthy medical records, Petitioner's case

supported neither an insanity nor an incompetency defense).   Under these facts, defense counsel

was not deficient in declining to pursue entrapment or insanity defenses and advising Petitioner

to plead guilty.

      Even assuming deficient performance, Petitioner cannot show reasonable probability that,

at the time of his plea, he would have insisted on proceeding to trial.   As noted above, it is clear

that Petitioner understood the nature of the charge against him and the consequences of his plea.

Moreover, Petitioner reaped substantial benefit by pleading guilty, obtaining a three-level

reduction in offense level for acceptance of responsibility.   *See* PSR ¶¶ 52, 59.   Under the

totality of the circumstances, as previously concluded, Petitioner voluntarily entered his plea of

guilty -- notwithstanding counsel's alleged scare tactics and refusal to pursue unsubstantiated

defenses.   Therefore, insofar as Petitioner alleges ineffective assistance of counsel, his claims fail.

### III.   RECOMMENDATION

      For the foregoing reasons, it is recommended that the section 2255 motion be **DENIED**.

SIGNED April 24, 2013.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law.    Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.    *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).    In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.    An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.    Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.    *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).


RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE